UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMES ANTHONY DAVIS, | Case No. 2:22-cv-01796-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| MICHAEL MINEV, *et al.*, | |
| Defendants. | |

Before the Court is Plaintiff James Anthony Davis' Motion for a Temporary Restraining Order ("TRO") (ECF No. 66) and Motion for a Preliminary Injunction (ECF No. 67). For the following reasons, the Court grants the Motion for a TRO and defers ruling on the Motion for a Preliminary Injunction.

**I.    FACTUAL BACKGROUND**

Mr. Davis filed this U.S.C. 42 § 1983 action against Nevada Department of Corrections ("NDOC") prison officials and medical providers for deliberate indifference to serious medical needs. He has two serious medical issues dating back to at least 2019.

First, Mr. Davis has a prostate condition which necessitated a series of surgeries that were done while he was in custody in May through July of 2021. The surgeries left him with a colostomy. Mr. Davis alleges Defendants have been deliberately indifferent to his aftercare by failing to schedule a surgery to reverse the colostomy, leaving him with a stoma that is repeatedly infected, requiring him to continue to use a colostomy bag, and causing pain.

Second, Mr. Davis has a painful, potentially cancerous breast lump for which multiple providers have recommended or requested biopsies, MRIs and/or CT scans, which have been

denied by NDOC's utilization review committee.

After this lawsuit was filed, screened, and stayed for Early Inmate Mediation, Mr. Davis was released on parole on December 6, 2023. In June 2024, Mr. Davis was arrested for an alleged offense and parole violation. His matter was resolved in state court around September 25, 2024 and he received credit for time served. Around that time he was brought back into NDOC custody at High Desert State Prison (HDSP) for a parole violation hearing. On November 19, 2024, his parole was revoked, and he does not have another hearing until November of 2025.

Since reincarceration, his medical issues have become more severe: he is suffering pain and bleeding relating to his prostate and stoma and chest pains related to his breast lump. After he relayed these conditions, Plaintiff's counsel met and conferred with the Attorney General, who represents the Defendants in this matter. The AG promptly notified medical personnel at HDSP. On November 4, 2024, he was transported to the hospital, admitted for two days, and discharged. His medical records indicate the medical providers found a gynecomastia (enlargement of breast tissue). They recommended a have a follow-up appointment within two weeks and a mammogram. No follow up appointment has occurred.

On December 18, 2024, Mr. Davis was brought to the emergency room by ambulance, while suffering from abdominal pain, nausea, and vomiting. Testing revealed "prominent enlargement" of Mr. Davis' prostate gland.

In January of 2025, Mr. Davis was transferred to Northern Nevada Correctional Center ("NNCC") where he is currently housed. Since there, he has not been provided sufficient colostomy bags. He suffers from severe diarrhea and abdominal symptoms which require his bag be changed more often. His NDOC medical records state he is supposed to receive ten bags per month according to "standard protocol." Mr. Davis indicates he has only been receiving a few bags per month. His medical records from NNCC do not state he has any "Keep on Person" bags and indicate he has only received a few bags in instances of suffering bleeding and severe diarrhea.

On February 21, 2025 the AG represented to Mr. Davis' counsel that he "received supplies and is scheduled to pick up more." However, Mr. Davis reports that between February

7, 2025 and March 19, 2025, he has only received a few bags, and has been forced to borrow colostomy bags from other inmates.

On March 17, 2025, Davis reports he was seen by a doctor at Carson Tahoe Urology, who expressed concern over his enlarged prostate and recommended a follow up appointment within four weeks.

Davis finally received an allotment of eight bags on March 20-21, 2025, following counsel's discussion with the AG regarding the lack of bags. Davis reports that the rings on these new bags, which are supposed to fit his stoma, are cut too large, causing cause his waste to leak.

## I.   RELEVANT PROCEDURAL HISTORY

On October 26, 2022, Plaintiff Davis commenced this action by filing a Motion to Proceed *in forma pauperis* with an attached complaint. (ECF No. 1). On December 1, 2024, Plaintiff filed a Motion for Preliminary Injunction. (ECF No. 5). On January 4, 2023, Plaintiff filed a Motion for Appointment of counsel. On January 12, 2023, Mr. Davis' Motion for Appointment of Counsel was granted, and his Motion for Preliminary Injunction was denied without prejudice. (ECF No. 7). On January 26, 2024, counsel for Mr. Davis appeared on his behalf. (ECF No. 8). On June 2, 2023, Mr. Davis filed his First Amended Complaint. (ECF No. 14). On July 3, 2023, his complaint was screened and allowed to proceed. (ECF No. 15). On February 5, 2024, Mr. Davis was granted leave to proceed *in forma pauperis*. (ECF No. 28). On February 26, 2024, the AG's office filed a Notice of Acceptance of service on the Defendants behalf. (ECF No. 29). On April 6, 2024, Defendants filed their answer to Plaintiff's First Amended Complaint. (ECF No. 32).

On March 24, 2025, Mr. Davis filed the instant Motions for a Temporary Restraining Order and for a Preliminary Injunction. (ECF Nos. 66-67).

## II.   LEGAL STANDARD

A party seeking injunctive relief must show the following: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without the injunction; (3) that the

1  balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v.
2  National Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The legal standards applicable
3  to a temporary restraining order is substantially identical." Stuhlbarg Int'l Sales Co., Inc. v. John
4  D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). The Ninth Circuit recognizes a
5  "sliding scale" variant of the Winter standard where a strong showing of one factor can offset a
6  weaker showing of another factor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131
7  (9th Cir. 2011).

8      Accordingly, in the Ninth Circuit, a preliminary injunction may still be granted if the
9  plaintiff can show: (1) that there are "serious questions going to the merits"; (2) the balance of
10  hardships tips sharply toward the plaintiff; and (3) the last two Winter factors are met. Fraihat v.
11  U.S. Immigration & Customs Enforcement, 16 F.4th 613, 635 (9th Cir. 2021). A "serious
12  question" is one on which the movant "has a fair chance of success on the merits." Sierra On-
13  Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

14      Rule 65 provides that the Court may issue a temporary restraining order where the moving
15  party provides a sworn statement clearly showing "that immediate and irreparable injury, loss, or
16  damage will result to the movant before the adverse party can be heard in opposition." Fed. R.
17  Civ. Proc. 65(b)(1). A temporary restraining order must expire within fourteen days, and the
18  Court must set a motion for preliminary injunction hearing at the earliest possible time. Id.

19      Ordinarily, a party seeking injunctive relief must post security in the amount required to
20  pay damages sustained by a wrongfully enjoined party; however, the court may, in its discretion,
21  waive this requirement. Fed. R. Civ. Proc 65(c). See also, Johnson v. Couturier, 572 F.3d 1067,
22  1086 (9th Cir. 2009).

23

24  **III.   DISCUSSION**

25      The Court finds that the requirements for issuing a TRO without an opportunity for
26  Defendants to be heard are satisfied, as Mr. Davis currently has not been provided adequate
27  colostomy bags and as a result waste is leaking from the bag, creating a serious risk of infection
28  and related severe health complications. The Court finds that immediate and irreparable injury

could result if Mr. Davis is not immediately provided adequate colostomy bags.

Additionally, Mr. Davis' counsel has provided an affidavit detailing his efforts to communicate the issue of the colostomy bag with the Attorney General. The AG has responded promptly and made an effort to notify NDOC of the issue, however, Mr. Davis reports that the colostomy bags provided are not cut correctly and therefore lead to waste leaking. Accordingly the Corut finds Mr. Davis has established why Defendants should not be provided an opportunity to be heard before the Court grants preliminary relief as to the colostomy bag.

The Court further waives the requirement that Mr. Davis post security, because there is no risk that NDOC will be harmed by providing medically appropriate colostomy bags to him, and Mr. Davis has been found indigent in this case and cannot afford to post a bond.

The Court does not find, however, that Mr. Davis has established a TRO should be granted without hearing as to his follow-up appointments regarding his prostate condition and enlarged breast tissue. The record indicates follow up appointments are recommended within several weeks. Therefore, Mr. Davis has not established immediate and irreparable injury regarding that medical treatment sufficient to warrant a TRO without a preliminary injunction hearing. The Court therefore defers ruling on Mr. Davis' other requested relief and sets this matter for hearing at the earliest possible time on April 8, 2025.

The Court also finds that Mr. Davis has established the four Winter factors with respect to the provision of colostomy bags. Mr. Davis has established a likelihood of success on the merits of his deliberate medical indifference claim. To prevail on a claim for deliberate medical indifference, a prisoner must first show a "serious medical need" by demonstrating that failure to treat the injury or condition could result in further significant injury or the "unnecessary and wanton infliction of pain. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc). Second, he must show that the defendant's response to the medical need was deliberately indifferent. Id. at 1060. The second prong is satisfied by showing that the prison official knowingly disregarded an excessive risk to a prisoner's health. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). Specifically, a plaintiff must show that the course of treatment the defendant(s) chose

was medically unacceptable under the circumstances and that the defendant(s) chose this course in conscious disregard for an excessive risk to a plaintiff's health. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted).

Mr. Davis has serious medical needs arising from his prostate, stoma, and colostomy bag which have necessitated multiple trips to the hospital and emergency room since November 2023. As a result, the alleged delay in care provided by NDOC, Mr. Davis still requires a colostomy bag, which needs to be regularly changed due to his stoma, to avoid infection. NDOC has recognized he should be provided at least 10 bags per month. The Court further finds that Defendants conduct could amount to deliberate indifference. Mr. Davis has not received the ten bags, and the bags he has received have been cut incorrectly so that waste leaks from them, risking serious infection and related severe medical complications.

For the reasons described above the Court finds Mr. Davis will suffer immediate and irreparable harm in the absence of preliminary relief. Finally, the court holds that the balance of hardships weighs heavily in favor of plaintiff, as NDOC will not be harmed by being ordered to provide constitutionally mandated care for Mr. Davis. Moreover, the public interest weighs in favor of prompt and constitutionally adequate medical care.

### IV.    CONCLUSION

The Court, having considered Plaintiff Davis' Motion for a Temporary Restraining Order and the documents in support thereof, including the declaration of Plaintiff's counsel Ryan Norwood, holds as follows:

**IT IS ORDERED** that Plaintiff's Motion for a Preliminary Injunction (ECF No. 67) is **DEFERRED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (ECF No. 66) is **GRANTED** in part. **IT IS ORDERED** that Defendants provide Mr. Davis with at least ten colostomy bags for the current month which are cut adequately to fit Mr. Davis' stoma and prevent any leaking. This Order will expire on April 8, 2025.

**IT IS FURTHER ORDERED** that Defendants shall file a response to the instant Motion

for Preliminary Injunction by April 1, 2025. Plaintiff shall file a reply by April 5, 2025.

**IT IS FURTHER ORDERED** that the parties shall appear on April 8, 2025, at 8:00 a.m. in courtroom 7C before the Honorable Richard F. Boulware, II for a hearing to show cause why an order should not be issued pursuant to Rule 65(a) of the Federal Rules of Procedure preliminarily enjoining Defendants, for the pendency of this action, as requested in Plaintiff's Motion for a Preliminary Injunction.

**DATED:** March 25, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**